# United States Court of Appeals for the Federal Circuit

2006-1317

QUALCOMM INCORPORATED
and SNAPTRACK, INC.,

FILED

DEC 1 8 2006

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

Plaintiffs-Appellees,

v.

NOKIA CORPORATION
and NOKIA, INC.,

Defendants-Appellants.

## JUDGMENT

ON APPEAL from the     United States District Court for the
                       Southern District of California

CASE NO.:              05-CV-2063

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

<u>VACATED and REMANDED</u>.

ENTERED BY ORDER OF THE COURT

DATED   OCT 2 0 2006

*[signature]*

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

By:              Date: 11/13/06

ISSUED AS A MANDATE:     NOV 1 3 2006

# United States Court of Appeals for the Federal Circuit

2006-1317

QUALCOMM INCORPORATED
and SNAPTRACK, INC.,

Plaintiffs-Appellees,

v.

NOKIA CORPORATION
and NOKIA, INC.,

Defendants-Appellants.

Christian E. Mammen, Day, Casebeer, Madrid & Batchelder LLP, of Cupertino, California, argued for plaintiffs-appellees.  With him on the brief were James R. Batchelder, and Craig H. Casebeer.  Of counsel on the brief were Louis M. Lupin, Alexander H. Rogers, and Roger Martin, QUALCOMM Incorporated, of San Diego, California; Gerald L. McMahon, and David J. Zubkoff, Seltzer, Caplan, McMahon, Vitek, of San Diego, California.

Kathleen M. Sullivan, Quinn, Emanuel, Urquhart, Oliver & Hedges LLP, of Redwood Shores, California, argued for defendants-appellants.  Of counsel was Frederick A. Lorig, of Los Angeles, California.  On the brief were Patrick J. Flinn, Keith E. Broyles, and John D. Haynes, Alston & Bird, LLP of Atlanta, Georgia.

Appealed from:  United States District Court for the Southern District of California

Senior Judge Rudi M. Brewster

# United States Court of Appeals for the Federal Circuit

2006-1317

QUALCOMM INCORPORATED
and SNAPTRACK, INC.,

Plaintiffs-Appellees,

v.

NOKIA CORPORATION
and NOKIA, INC.,

Defendants-Appellants.

———————————————

DECIDED:  October 20, 2006

———————————————

Before NEWMAN, SCHALL, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> PROST.  <u>Circuit Judge</u> NEWMAN dissents.

PROST, <u>Circuit Judge</u>.

Appellants, Nokia Corporation and Nokia, Inc. (collectively, "Nokia"), appeal the March 14, 2006 Order of the United States District Court for the Southern District of California denying Nokia's motion to stay litigation with appellees, Qualcomm Inc. and SnapTrack, Inc. (collectively, "Qualcomm"), pending arbitration.  <u>Qualcomm Inc. v. Nokia Corp.</u>, No. 05-CV-2063 B (S.D. Cal. Mar. 14, 2006) ("<u>Order</u>").  Because the district court did not perform the correct inquiry as we discuss herein, we vacate the

district court's March 14, 2006 Order with respect to its denial of Nokia's motion to stay, and remand for the court to perform the inquiry in the first instance.

## I. BACKGROUND

Wireless telecommunications require mobile stations and infrastructure equipment that conform to a common set of standards. Two of the primary mobile telecommunications standards are the Code Division Multiple Access standard ("CDMA") and the Global System for Mobile Communications standard ("GSM"). Qualcomm pioneered CDMA technology and consequently holds and licenses patents related to that technology. Nokia manufactures wireless telephone handsets and telecommunications infrastructure equipment used by wireless carriers.

In July 2001, Qualcomm and Nokia entered into a "Subscriber Unit and Infrastructure Equipment License Agreement" (the "2001 Agreement") whereby Qualcomm granted Nokia a non-exclusive license to some of Qualcomm's patents, permitting Nokia to make and sell products that incorporate CDMA technology. The 2001 Agreement contains an arbitration clause which covers "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof" and dictates that any such dispute "shall be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association (the 'AAA Rules')." 2001 Agreement at ¶ 22. The 2001 Agreement also specifies that it shall be construed in accordance with California law. Id.

On November 4, 2005, Qualcomm sued Nokia for patent infringement in the United States District Court for the Southern District of California, asserting in its Complaint that Nokia infringed twelve of Qualcomm's patents. After Qualcomm filed its

Complaint, Nokia initiated an arbitration proceeding against Qualcomm on December 20, 2005. As amended, Nokia's Arbitration Demand asked an arbitrator to resolve its dispute with Qualcomm pertaining to two issues relevant to this appeal: (1) Nokia's estoppel defense, in which it asserted that Qualcomm engaged in misleading conduct that caused Nokia to believe that Qualcomm did not hold issued or pending patents it intended to assert against Nokia's GSM products, and (2) Nokia's license defense, in which it sought a declaration that it had a valid and enforceable license to make, import, use, sell, offer to sell, lease, or otherwise dispose of products that incorporate CDMA technology and that Qualcomm's claims of infringement against those products should be barred by the 2001 Agreement. Even though these two issues were not directly raised in Qualcomm's Complaint, Nokia sought to assert them as affirmative defenses to Qualcomm's infringement claims.[1]

Also in response to Qualcomm's Complaint, Nokia filed two motions in the district court: (1) a motion to stay the district court action pursuant to section 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, and (2) a motion to dismiss or, in the alternative, for a more definite statement. On March 14, 2006, the district court denied Nokia's motions to stay and to dismiss, but granted in part Nokia's alternative request for a more definite statement. In addressing Nokia's motion to stay, the court found that

> [t]he estoppel . . . defense[] is not in the instant case. The instant case involves allegations that Nokia infringed twelve patents in suit. The

---

[1]    As Nokia explains it, if Nokia wanted to assert the affirmative defenses in the district court action, it was required to raise them in its Answer. However, if Nokia asserted them in its Answer, it was concerned that it could be accused of waiving the right (should it exist) to arbitrate them. Thus, it appears that Nokia first raised its arbitrability contentions with respect to those defenses in its motion to stay.

products that are listed in the complaint are non-CDMA products. As such, the Court finds that the patent infringement issues in the instant action are not even remotely connected to the 2001 Agreement that deals with CDMA products and are not referable to arbitration. Therefore, the Court is not satisfied under 9 U.S.C. § 3 that the issues involved in the instant case are referable to arbitration . . . .

Order, slip op. at 3.

Thereafter, Qualcomm amended its Complaint in response to the court's order for a more definite statement, limiting its infringement claims to Nokia's GSM-only products, as opposed to its CDMA products. Paragraphs 23 and 24 of Qualcomm's First Amended Complaint assert:

23.    On information and belief, Nokia manufacturers, uses, sells, offers for sale, and/or imports into the United States products that comply with the GSM family of standards and technical specifications promulgated, published and/or adopted by the 3rd Generation Partnership Project . . . .

24.    Nokia's Products accused of infringement by this Complaint exclude any Nokia product that is licensed under the [2001] Agreement dated July 2, 2001 . . . .

Qualcomm's First Am. Compl. at ¶¶ 23-24.

Nokia, however, maintains that paragraph 23 contains allegations directed to standards promulgated by the 3rd Generation Partnership Project, which promulgates standards for UMTS,[2] a technology that Nokia believes is licensed under the 2001 Agreement. Thus, according to Nokia, because paragraph 23 accuses UMTS products of infringement as well as GSM products, but paragraph 24 excludes products licensed under the 2001 Agreement, there is a dispute as to which Nokia products are licensed under the 2001 Agreement.

---

[2]    UMTS refers to another telecommunications standard called Universal Mobile Telecommunications Systems.

Following the court's denial of its motion to stay pending arbitration, Nokia filed a motion to stay pending appeal to this court, which the district court granted.

Because the district court's jurisdiction was based on 28 U.S.C. § 1338, the district court's order is appealable under 28 U.S.C. § 1292(a)(1), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(c)(1). See Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1354-55 (Fed. Cir. 2004) (concluding that section 16 of the FAA renders appealable under § 1292(a)(1) the denial of an injunctive order, i.e., a motion to compel arbitration).

## II. DISCUSSION

Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The FAA "is a congressional declaration of a liberal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. See In re Complaint of Hornbeck Offshore Corp., 981 F.2d 752, 754 (5th Cir. 1993). Pursuant to the statutory language, if a district court is "satisfied" that the issue involved in the suit is arbitrable, then it must stay the trial of the action. See 9 U.S.C. § 3 (2000).

The dispute between the parties is based on the language, "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall . . . stay the trial of the action . . . ."  Id. Specifically, this case raises the question of how to reconcile an agreement to delegate arbitrability decisions to an arbitrator in accordance with the language of section 3 of the FAA, which specifies that the district court be "satisfied" as to the arbitrability of an issue before ordering a stay.  Thus, we must necessarily determine what inquiry the district court should perform in order to be "satisfied" under section 3.

Nokia asserts that the court's inquiry is limited to determining whether the 2001 Agreement clearly and unmistakably evidences the parties' intent to delegate arbitrability decisions to an arbitrator.  According to Nokia, if the court determines that the parties so intended, it must stay "the trial of the action" until an arbitrator rules on the arbitrability of the disputed issue.[3]  Qualcomm, however, advocates a more detailed inquiry by the district court beyond the question of whether the parties intended to have arbitrability issues determined by an arbitrator.  Qualcomm's position would essentially allow the court to rule on the arbitrability of an issue in order to be "satisfied" that the issue is actually arbitrable.  Thus, we must determine whether the district court performed the correct inquiry when it determined that Nokia's affirmative defenses did not raise issues that are referable to arbitration.

We conclude that in order to be "satisfied" of the arbitrability of an issue pursuant to section 3 of the FAA, the district court should first inquire as to who has the primary power to decide arbitrability under the parties' agreement.  If the court concludes that

---

[3]    While Nokia's arguments in its briefs were limited to the first inquiry discussed above, at oral argument counsel for Nokia agreed that if an assertion of arbitrability were "wholly groundless," or its equivalent, the district court would not be required to stay the trial of the action even though the parties' had clearly and unmistakably intended to delegate arbitrability decisions to an arbitrator.

the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule that the "question of arbitrability . . . is . . . for judicial determination" applies and the court should undertake a full arbitrability inquiry in order to be "satisfied" that the issue involved is referable to arbitration. AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). If, however, the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." See Dream Theater, Inc. v. Dream Theater, 21 Cal. Rptr. 3d 322, 326 (Cal. Ct. App. 2004). If the court finds that the assertion of arbitrability is not "wholly groundless," then it should stay the trial of the action pending a ruling on arbitrability by an arbitrator. If the district court finds that the assertion of arbitrability is "wholly groundless," then it may conclude that it is not "satisfied" under section 3, and deny the moving party's request for a stay.

## A. Standard of Review

The parties dispute what the appropriate standard of review is in this case. While both parties agree that Ninth Circuit law applies, Nokia argues that the Ninth Circuit applies a de novo standard, while Qualcomm argues that it applies an abuse of discretion standard.

This court applies regional circuit law to questions of arbitrability that are not "intimately involved in the substance of enforcement of a patent right." Microchip Tech., 367 F.3d at 1356 (quoting Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001)). Because the questions of arbitrability in this case are not "intimately involved in

. . . a patent right," we look to the law of the regional circuit, in this case the United States Court of Appeals for the Ninth Circuit, to determine the applicable standard of review.

The Ninth Circuit applies both de novo review and abuse of discretion review to district court decisions with respect to arbitration. "A denial of a stay of proceedings pending arbitration will only be overturned when there has been an abuse of discretion." Alascom, Inc. v. ITT N. Elec. Co., 727 F.2d 1419, 1422 (9th Cir. 1984) (citing Mediterranean Enters., Inc. v. Ssangyong, 708 F.2d 1458 (9th Cir. 1983)). However, "[i]n order to determine whether [a] district court abused its discretion, it is necessary to decide whether there were any claims to be arbitrated." Id. "A determination of the arbitrability of a dispute, like the interpretation of any contractual provision, is subject to de novo review." Id. (citing Mediterranean Enters., 708 F.2d at 1462-63).

In this case, however, the issue we confront is not a determination of the arbitrability of a dispute, but rather whether the district court performed the correct inquiry in order to determine whether it was "satisfied" that the issue involved in the case was referable to arbitration pursuant to section 3 of the FAA. Further, it does not appear that the Ninth Circuit has explicitly addressed the standard of review for such decisions under section 3, and neither party has pointed us to a Ninth Circuit case that addresses a denial of a motion to stay in this context. At least two other circuits, however, have directly addressed the standard of review of a district court's order denying a motion to stay under section 3 of the FAA and have applied de novo review. See FSP, Inc. v. Societe Generale, 350 F.3d 27, 30 (2d Cir. 2003) ("We review a district court's denial of a motion to stay an action in favor of arbitration de novo."); In re

Complaint of Hornbeck, 981 F.2d at 754 (reviewing de novo the district court's order denying the defendant's motion for stay pursuant to section 3 of the FAA).

Regardless of which standard of review the Ninth Circuit would apply,[4] we conclude that the district court erred because instead of undertaking the inquiry we describe herein, the court undertook a full arbitrability analysis as if the parties had not clearly and unmistakably delegated arbitrability decisions to an arbitrator.

### B. Analysis

First, we must determine who has the primary power to decide arbitrability in this case.  Generally, the "question of arbitrability . . . is undeniably an issue for judicial determination." AT&T Techs., 475 U.S. at 649.  However, in First Options of Chicago, Inc. v. Kaplan, the United States Supreme Court held that "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."  514 U.S. 938, 943 (1995).  The Court then stated that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts."  Id. at 944.  However, the added qualification is that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."  Id. (quoting AT&T Techs., 475 U.S. at 649).

---

[4] Because we conclude infra that the district court's inquiry involves both legal and factual inquiries, the Ninth Circuit's standard of review might well be de novo for the contract interpretation inquiry, namely whether the parties clearly and unmistakably intended to delegate arbitrability decisions to an arbitrator, see Alascom, 727 F.2d at 1422 (comparing appellate review of the arbitrability of a dispute to appellate review of an interpretation of a contractual provision), and abuse of discretion when reviewing the court's "wholly groundless" inquiry.

In this case, the 2001 Agreement between the parties clearly states that it "shall be governed by and construed and enforced in accordance with the laws of the State of California . . . ." 2001 Agreement at ¶ 22. "California law is consistent with federal law on the question of who decides disputes over arbitrability." Dream Theater, 21 Cal. Rptr. 3d at 326. Thus, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id.

The 2001 Agreement incorporates the AAA Rules as follows: "Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof, shall be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association (the 'AAA Rules')." 2001 Agreement at ¶ 22. Article 15 of the AAA Rules provides that "[t]he tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." In Contec Corp. v. Remote Solution Co., the Second Circuit held that because the agreement at issue in that case incorporated the AAA Rules and because those rules give the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," the parties' incorporation of those rules evidences a clear and unmistakable intent to delegate the determination of arbitrability to an arbitrator. 398 F.3d 205, 208 (2d Cir. 2005). We agree with the Second Circuit's analysis in Contec and likewise conclude that the 2001 Agreement, which incorporates the AAA Rules containing the same language as that in Contec, clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator.

Because we conclude that the 2001 Agreement shows the parties' clear and unmistakable intent to delegate arbitrability decisions to an arbitrator, the next inquiry is whether Nokia's assertions of arbitrability are "wholly groundless."[5]  In this case, Nokia asserts that it has raised two issues that are arbitrable.  The first is an estoppel defense that, as an affirmative defense, Nokia would be required to plead in an answer to Qualcomm's Complaint.  Specifically, Nokia asserts that Qualcomm's conduct during the negotiations leading to the 2001 Agreement deliberately led Nokia to believe that Qualcomm did not hold patents related to GSM-based technology and therefore Nokia did not need to acquire a license for GSM-based products.  Further, Nokia argues that its estoppel defense clearly "arises out of or relate[s] to" the 2001 Agreement.  Second, Nokia asserts that there is an issue with respect to the scope of the license granted in the 2001 Agreement.  Specifically, Nokia points to Qualcomm's First Amended Complaint which, in paragraph 24, excludes any Nokia product licensed under the 2001 Agreement.  Nokia thus asserts that any defense based on its license under the 2001 Agreement is also arbitrable.

Qualcomm first responds to Nokia's estoppel defense argument by pointing out that the 2001 Agreement covers CDMA products, not GSM-based products.  Further, it asserts that Nokia knew it was not negotiating a GSM license and that therefore the

---

[5]       We believe that the "wholly groundless" inquiry allows the district court to determine whether it is "satisfied" pursuant to section 3 while also preventing a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration.  In California, for example, even if the court finds that the parties' intent was clear and unmistakable that they delegated arbitrability decisions to an arbitrator, the court may make a second more limited inquiry to determine whether a claim of arbitrability is "wholly groundless."  Dream Theater, 21 Cal. Rptr. 3d at 326 (citing McCarroll v. L.A. County Dist. Council of Carpenters, 315 P.2d 322 (Cal. 1957)).

estoppel claim does not "aris[e] out of or relat[e]" to the 2001 Agreement.  Second, Qualcomm asserts that Nokia's license defense is moot because its First Amended Complaint expressly excludes "any Nokia product that is licensed under" the 2001 Agreement.  It also alleges that Nokia raised this issue in its Amended Arbitration Demand in order to artificially keep the arbitration alive and stall the district court action.

Although we recognize that the 2001 Agreement contains a broad arbitration clause, which includes "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof," 2001 Agreement at ¶ 22, and that Nokia's estoppel defense is based on events that transpired during the negotiations surrounding the 2001 Agreement and may, with a favorable ruling, directly affect Qualcomm's infringement case, the district court has not yet had the opportunity to apply the "wholly groundless" test to either of Nokia's defenses.[6]  The transcript of the district court's March 13, 2006 hearing reveals that the district court did not perform a "wholly groundless" inquiry.  Rather, the court identified the issue as though it was required to rule on the arbitrability of Nokia's defenses itself: "As I understand the issue that I'm going to have to handle, with respect to that issue, is whether or not the issue is arbitrable in the arbitration.  That is to say that the facts of this case, whether they are within the contract, or the CDMA cross licensing."   Tr. of Mot. Hr'g at 3:12-16, Qualcomm Inc. v. Nokia Corp., No. 05-CV-2063 B (S.D. Cal. Mar. 13, 2006).

On remand, in undertaking the "wholly groundless" inquiry, the district court should look to the scope of the arbitration clause and the precise issues that the moving

---

[6]     Because Nokia added the license defense to its Arbitration Demand by amendment, the district court's Order did not address it.

party asserts are subject to arbitration.   Because any inquiry beyond a "wholly groundless" test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the 2001 Agreement, the district court need not, and should not, determine whether Nokia's defenses are in fact arbitrable.  If the assertion of arbitrability is not "wholly groundless," the district court should conclude that it is "satisfied" pursuant to section 3.

## CONCLUSION

A district court's inquiry in order to be "satisfied" pursuant to section 3 of the FAA begins with the question of who has the power to determine the arbitrability of a dispute between the parties.  If the court concludes that the parties clearly and unmistakably intended to delegate the power to an arbitrator, then the court should also inquire as to whether the party's assertion of arbitrability is "wholly groundless."  If, however, the court concludes that the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule that the "question of arbitrability . . . is . . . for judicial determination" applies and the court itself should then undertake a full arbitrability inquiry in order to be "satisfied" that the issue involved is referable to arbitration.

In this case, the parties clearly and unmistakably intended to delegate arbitrability questions to an arbitrator as evidenced by their incorporation of the AAA Rules into the 2001 Agreement.  The remaining question is whether Nokia's assertions that its estoppel and license defenses "aris[e] out of or relat[e] to" the 2001 Agreement are "wholly groundless."  On remand, the court should not undertake to determine whether Nokia's assertions are in fact arbitrable, but rather should merely determine

whether Nokia's assertions of arbitrability under the 2001 Agreement are "wholly groundless" and, if not, stay the trial of the action to permit an arbitrator to rule on the arbitrability of those issues.

Accordingly, we vacate the district court's March 14, 2006 Order with respect to its denial of Nokia's motion to stay and remand to the district court.

COSTS

Each party shall bear its own costs.

VACATED and REMANDED

NEWMAN, Circuit Judge, dissents.  Circuit Judge Newman would affirm the judgment of the district court.